Michael S. Davis (MD-6317)
Anthony I. Giacobbe, Jr. (AG-0711)
ZEICHNER ELLMAN & KRAUSE LLP
575 Lexington Avenue
New York, New York 10022
(212) 223-0400

*Attorneys for Petitioner*
*National Union Fire Insurance Company of Pittsburgh, Pa.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA., on behalf of itself and each of the related insurers that provided coverage to respondent,<br><br>                Petitioner,<br><br>    - and -<br><br>GAINEY CORPORATION,<br><br>                Respondent. | 07 CIV 4067 (PKL) |

**MEMORANDUM OF LAW IN SUPPORT OF PETITION OF
NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.
TO COMPEL ARBITRATION OF THE ANDERSON DISPUTE**

**PRELIMINARY STATEMENT**

National Union Fire Insurance Company of Pittsburgh, PA, on behalf of itself and each of the related insurers that provided coverage to respondent ("National Union"), submits this Memorandum of Law in support of its petition (the "Petition") to compel arbitration of the Anderson Dispute[1] requiring Respondent Gainey Corporation ("Respondent") to proceed with arbitration of the Anderson Dispute.

---

[1] Defined terms and exhibits referred to herein are annexed to National Union's Petition to Compel Arbitration of the Anderson Dispute.

503981.02/10539-012/AIG

## FACTUAL BACKGROUND

A. **The Insurance Program and the Parties**

National Union provided insurance coverage to Respondent and each of its subsidiary, affiliated or associated organizations that are included as named insured under any of the policies issued pursuant to an insurance program (the "Insurance Program") beginning as of June 1, 2004.

The Insurance Program is governed by a Payment Agreement dated June 1, 2004 (the "2004 Payment Agreement"), a 2004 addendum to the Payment Agreement (the "2004 Addendum") and certain addenda and schedules to the Payment Agreement (together, the "Insurance Program Agreements"). The 2004 Payment Agreement, executed by "Gainey Corporation" as "our Client," defines "You" as "the person or organization named as our Client in the title page of this Agreement. . ." See Exhibit 1 at NU 1001 and NU 1004. The 2004 Payment Agreement expressly provides that Respondent ("You") shall satisfy "Your Payment Obligation," which is defined in the 2004 Payment Agreement as:

> "*Your Payment Obligation*" means <u>the amounts that *You* must pay us for the insurance and services in accordance with the terms of the *Policies*, this Agreement, and any similar primary casualty insurance *Policies* and agreements with us incurred before the inception date hereof</u>. Such amounts shall include, but are not limited to, any of the following, including any portions thereof not yet due and payable:
>
> • the premiums and premium surcharges,
>
> • *Deductible Loss Reimbursements*,
>
> • any amount that we may have paid on *Your* behalf because of any occurrence, accident, offense, claim or suit with respect to which *You* are a self-insurer,

> - any other fees, charges, or obligations as shown in the *Schedule* or as may arise as *You* and we may agree from time to time.
>
> **Loss Reserves:** *Your Payment Obligation* includes any portion of the premiums, premium surcharges, *Deductible Loss Reimbursements* or other obligations that we shall have calculated on the basis of our reserves for *Loss* and *ALAE*. Those reserves shall include specific reserves on known *Loss* and *ALAE*, reserves for incurred but not reported *Loss* and *ALAE*, and reserves for statistically expected development on *Loss* and *ALAE* that have been reported to us. Any *Loss* development factors we apply in determining such reserves will be based on our actuarial evaluation of relevant statistical data including, to the extent available and credible, statistical data based upon *Your* cumulative *Loss* and *ALAE* history.

See Exhibit 1[2] at NU 1004. The 2004 Payment Agreement expressly provides that it governs the policies and schedules as follows:

> This Agreement begins on the Effective Date shown in the first page (the title page) of this Agreement. Unless otherwise agreed in writing, this Agreement will also apply to any *Policies* and *Schedules* that we may issue as renewals, revisions, replacements or additions to the attached *Schedule* and the *Policies* listed there.

See Exhibit 1 at NU 1003.

**B.   The Agreement to Arbitrate**

The 2004 Payment Agreement contains a broad arbitration clause that expressly gives the arbitrators jurisdiction over "the entire matter in dispute, including any question as to its arbitrability" (the "Arbitration Clause") as follows:

> We will review the disputed items promptly and provide *You* with further explanations, details, or corrections. *You* must pay us the correct amounts for the disputed items within 10 days of agreement

---

[2]  The parties executed another Payment Agreement as of June 1, 2006 (the "2006 Payment Agreement") that contains identical definitions of "You" and "Your Payment Obligation."

between *You* and us about their correct amounts. Any disputed items not resolved within 60 days after our response to *Your* written particulars must immediately be submitted to arbitration as set forth below. With our written consent, which shall not be unreasonably withheld, *You* may have reasonable additional time to evaluate our response to *Your* written particulars.

So long as *You* are not otherwise in default under this Agreement, we will not exercise our rights set forth under "What May We Do in Case of Default?", pending the outcome of the arbitration on the disputed amount of *Your Payment Obligation*.

**What about disputes other than disputes about payment due?**

<u>**Any other unresolved dispute arising out of this Agreement must be submitted to arbitration.**</u> *You* must notify us in writing as soon as *You* have submitted a dispute to arbitration. We must notify *You* in writing as soon as we have submitted a dispute to arbitration.

**Arbitration Procedures**

**Qualifications of arbitrators:** Unless *You* and we agree otherwise, all arbitrators must be executive officers or former executive officers of property or casualty insurance or reinsurance companies or insurance brokerage companies, or risk management officials in an industry similar to *Yours*, domiciled in the United Sates of America not under the control of either party to this Agreement.

**How the arbitration must proceed:** The arbitrators shall determine where the arbitration shall take place. The arbitration must be governed by the United Sates Arbitration Act, Title 9 U.S.C. Section 1, et seq. Judgment upon the award rendered by the arbitrators may be entered by a court having jurisdiction thereof.

*You* and we must both submit our respective cases to the arbitrators within 30 days of the appointment of the third arbitrator. The arbitrators must make their decision within 60 days following the termination of the hearing, unless *You* and we consent to an extension. The majority decision of any two arbitrators, when file with *You* and us will be final and binding on *You* and on us.

The arbitrators must interpret this Agreement as an honorable engagement and not merely a legal obligation. They are relieved of all judicial formalities. They may abstain from following the strict rules of law. They must make their award to effect the general purpose of this Agreement in a reasonable manner.

> The arbitrators must render their decision in writing, based upon a hearing in which evidence may be introduced without following strict rules of evidence, but in which cross-examination and rebuttal must be allowed.
>
> The arbitrators may award compensatory money damages and interest thereupon. They may order *You* to provide collateral to the extent required by this Agreement. **They will have exclusive jurisdiction over the entire matter in dispute, including any question as to its arbitrability.** However, they will not have the power to award exemplary damages or punitive damages, however denominated, whether or not multiplied, whether imposed by law or otherwise.
>
> **Expenses of Arbitration:** *You* and we must each bear the expense of our respective arbitrator and must jointly and equally bear with each other the expense of the third arbitrator and of the arbitration.
>
> This Section will apply whether that dispute arises before or after termination of this Agreement.

See, Exhibit 1 at NU 1008 – 1009 (emphasis added).[3] The 2004 Addendum specifically provides that:

> **How arbitrators must be chosen:** You must choose one arbitrator and we must choose another. They will choose the third. If you or we refuse or neglect to appoint an arbitrator within 30 days after written notice from the other party requesting it to do so, or if the two arbitrators fail to agree on a third arbitrator within 30 days of their appointment, either party may make application only to a court of competent jurisdiction in the City, County, and State of New York. **Similarly, any action or proceeding concerning arbitrability, including motions to compel or to stay arbitration, may be brought only in a court of competent jurisdiction in the City, County, and State of New York.**

---

[3] The 2006 Payment Agreement contains the identical Arbitration Clause.

See, Exhibit 1 at NU 1013 (emphasis added).[4]

## C.     The Demand For Arbitration

National Union served a demand for arbitration dated March 8, 2007, asserting claims for security owed and "**any other amounts due or that may become due** pursuant to the Payment Agreement for Insurance Risk Management Services, between the Claimants and Gainey Corporation, the related schedules and any amendments thereto (collectively, the "Agreement") annexed hereto as Exhibit A." See Exhibit 2. Both parties have appointed their respective arbitrators but a third arbitrator has not yet been selected.

## D.     The Anderson Dispute

Respondent has asserted a dispute of National Union's claim for reimbursement of amounts paid by National Union in connection with the settlement of a claim under the Insurance Program referred to by the Parties as the Anderson Claim (the "Anderson Dispute"). A copy of Respondent's letter asserting a dispute is attached as Exhibit 3. As set forth above, the 2004 Payment Agreement expressly states that it governs the Policies and Schedules. See NU 1003.

---

[4] The parties executed an Addendum to the Payment Agreement effective June 1, 2006 (the "2006 Addendum") that contains an identical provision.

# ARGUMENT

## I.

## BY AGREEMENT THIS PROCEEDING TO COMPEL ARBITRATION MUST BE HEARD IN NEW YORK

Respondent has requested that National Union accept service of a lawsuit regarding the Anderson Dispute. The parties explicitly agreed that:

> Similarly, **any** action or proceeding **concerning arbitrability,** including motions to compel or to stay arbitration, may be brought **only** in a court of competent jurisdiction **in the City, County, and State of New York.**

See, Exhibit 1 at NU 1013 (emphasis added). Thus, both National Union and Respondent agreed that a court in New York County – not any other court – must decide "any action or proceeding concerning arbitrability." Id.

Because the Arbitration Clause provides that "**any** action or proceeding **concerning arbitrability**, including motions to compel or stay arbitration may be brought **only** in a court of competent jurisdiction in the City, County and State of New York," this court should enforce the Arbitration Clause as written and decide this motion to compel arbitration of the Anderson Dispute before any proceedings are due to take place in the lawsuit that Respondent has stated it intends to commence concerning the Anderson Dispute.

## II.

## THE FEDERAL ARBITRATION ACT REQUIRES ARBITRATION

A. **The Arbitration Clause Is a Broad Clause and Must Be Enforced**

The 2004 Payment Agreement provides for arbitration of "any other unresolved dispute arising out of this Agreement" and that "the arbitrators shall have exclusive jurisdiction over the entire matter in dispute, including the issue of arbitrability." See, Exhibit 1 at NU 1008 – 1009. This is a broad arbitration agreement, and the Federal Arbitration Act ("FAA") and controlling case law require that this Court enforce this arbitration agreement. Section 2 of the Act, 9 U.S.C. § 2 provides:

> A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, **shall be valid, irrevocable, and enforceable**, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. (Emphasis added.) The Supreme Court has unambiguously held that this provision of the FAA is to be followed. Shearson/American Express v. McMahon, 482 U.S. 220, 226-27, 1907 S.Ct. 2332, 2337, 96 L.Ed.2d 185 (1987); Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 220, 105 S.Ct. 1238, 1241 (1985).

Similarly, the Second Circuit has consistently enforced arbitration agreements:

> The FAA, codified at 9 U.S.C. §§1-14, provides that written provisions to arbitrate controversies in any contract involving interstate commerce 'shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.' Id. §2. 'There is a strong federal policy

> favoring arbitration as an alternative means of dispute resolution.'
> In accordance with that policy, where, as here, the existence of an arbitration agreement is undisputed, doubts as to whether a claim falls within the scope of that agreement should be resolved in favor of arbitrability.

Ace Capital Re Overseas Ltd. v. Central United Life Ins. Co., 307 F.3d 24, 29 (2d Cir. 1994) Citing, Hartford Accident & Indem. Co. v. Swiss Reinsurance Am. Corp., 246 F.3d 219, 226 (2d Cir. 2001) and Moses H. Cone Mem'l Hosp., supra, 24-25. See also, Garten v. Kurth, 265 F.3d 136, 142 (2d Cir. 2001) ("Under the FAA, courts are required generally to resolve questions of arbitrability in favor of arbitration."); Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc., 252 F. 3d 218, 223 (2d Cir. 2001) ("It is familiar law that the Federal Arbitration Act, 9 U.S.C. § 1 et seq. (1994) (Arbitration Act), expresses 'a liberal federal policy favoring arbitration agreements' and that 'any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.'" Citing, Moses H. Cone Mem'l Hosp., supra, 24-25.)

The Second Circuit in Louis Dreyfus Negoce S.A., above, established that when determining whether a particular dispute falls within the scope of an arbitration agreement this Court must first classify the arbitration clause as broad or narrow. Louis Dreyfus Negoce S.A., supra, at 224; Ace Capital Re Overseas Ltd., supra, 30-34. Specifically, this Court must determine: "whether, on the one hand, the language of the clause, taken as a whole, evidences the parties' intent to have arbitration serve as the primary recourse for disputes connected to the agreement containing the clause, or if, on the other hand, arbitration was designed to play a more limited role in any future dispute." Louis Dreyfus Negoce S.A., supra, at 225.

In fact, two other courts in this District have granted similar motions to compel arbitration involving similar insurance programs having broad arbitration agreements where the respondents had filed actions in other states concerning arbitrable disputes. See Raytheon v.

National Union, 306 F.Supp.2d 346 (S.D.N.Y. 2004) and National Union Fire Insurance Company of Pittsburgh, PA v. Champps Entertainment, Inc., 2004 U.S. Dist. Lexis 25052 (S.D.N.Y. 2004). National Union submits that these decisions are persuasive and that the reasoning of these decisions compels arbitration of the Anderson Dispute as well.

## III.

## A HEARING ON SHORT NOTICE IS WARRANTED

Section 4 of the FAA states, in part, that:

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under Title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement. **Five days**' notice in writing of such application shall be served upon the party in default. (Emphasis added).

9 U.S.C. § 4.

Respondent has specifically asked counsel for National Union to accept service of a "lawsuit" that Respondent asserts it will file regarding the Anderson Dispute, thus evidencing Respondent's refusal to arbitrate the Anderson Dispute.

The Anderson Dispute indisputably falls within the broad Arbitration Clause. Moreover, even if Respondent disputes arbitrability of the Anderson Dispute, the Arbitration Clause expressly states that: "They [the arbitrators] shall have jurisdiction over the entire matter in dispute, including any question as to its arbitrability." See, Exhibit 1 at NU 1009.

Accordingly, National Union seeks a hearing on five days' notice pursuant to 9 U.S.C. § 4 determining that the Anderson Dispute be submitted to arbitration. Given that Respondent intends to commence a lawsuit elsewhere, this Court should hear this motion to compel arbitration before any proceedings would take place in the threatened lawsuit.

## CONCLUSION

National Union respectfully requests that this Court schedule a hearing on five days' notice and then compel Respondent to arbitrate the Anderson Dispute.

Dated:    New York, New York
          May 29, 2007

ZEICHNER ELLMAN & KRAUSE LLP

By: _____
     Michael S. Davis (MD-6317)
     Anthony I. Giacobbe, Jr. (AG-0711)
       Attorneys for Petitioner, National Union
       Fire Insurance Company of Pittsburgh, Pa.
     575 Lexington Avenue
     New York, New York 10022
     (212) 223-0400